IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| United States of America ex rel.<br>NATHANIEL BANKS,<br><br>               Petitioner,<br>  v.<br><br>RICK HARRINGTON, Warden<br> Menard Correctional Center,<br><br>               Respondent. | No. 12 C 7795<br><br>Hon. Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Petitioner Nathaniel Banks brings this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. He is incarcerated at the Menard Correctional Center in Menard, Illinois, where he is in the custody of Rick Harrington, the warden of that facility. A judge convicted him of attempted first-degree murder, 720 ILCS § 5/9-1(A)(1), and unlawful use of a weapon by a felon, 720 ILCS §5/24-1.1(A) on July 31, 2006. He is currently serving a sixty-five year sentence. For the following reasons, Banks's petition is dismissed.

**FACTS**

On March 12, 2005, Banks was at a bar called Hill's Lounge in Chicago when he encountered Charles Wilson. (Dkt. No. 19-3 at p. 6.) Banks attempted to shake Wilson's hand, but Wilson declined because he heard rumors that Banks planned to rob him. (*Id.*) After leaving the bar, Wilson met Cassandra Moore and Patricia Jones outside. (*Id.*) Wilson and Jones waited in Wilson's car while Moore went into a nearby sandwich shop. (*Id.*) While waiting, Thomas Moore pulled his car (with Banks in the passenger seat) alongside Wilson's on 63rd Street. (*Id.*) Banks then fired a shot at Wilson's car, breaking the driver's side front seat window. (Dkt. No.

19-1 at p. 306.) Banks then exited Moore's car, stood near Wilson's car, and shot Wilson twelve times. (*Id.*) Both Jones and Wilson suffered permanent injuries in the shooting. (Dkt. No. 19-3 at p. 6.)

After the shooting, Wilson drove himself to a police station two blocks away while Cassandra Moore ran back into the sandwich shop to call police. (*Id.* at 6–7.) At the police station, Wilson told the police that Banks and Thomas Moore shot him, and that they were driving a white vehicle. (*Id.* at 7–8.) Chicago Police Department Officers John Granat and Whitney Russo arrived at the crime scene and began searching for a car matching Wilson's description. (*Id.* at 8.) Officer Granat eventually noticed a man walking towards a white car parked on the 6300 block of South Aberdeen Street. (*Id.*) Officer Granat testified that he recognized the man as Banks. (*Id.*) Officer Granat approached the car and ordered Banks and Thomas Moore, who was in the driver's seat, out of the car. (*Id.*) Officer Granat questioned Banks, and learned he lived at 6337 South Aberdeen Street. (*Id.*)

Police took Cassandra Moore to South Aberdeen Street, where she identified Thomas Moore's car. (*Id.* at 7.) She was then taken back to the police station, where she identified Banks in a line-up. Officer Fernandez went to Banks's address and received consent to search, where he found a gun near the basement stairs. (*Id.* at 8.) The parties stipulated that the cartridges found at the scene of the shooting matched the gun found in Banks's home. (*Id.*)

On July 31, 2006, following a bench trial, Banks was convicted of two counts of attempted first degree murder and one count of unlawful use of a weapon by a felon. (Dkt. No. 19-8 at p. 43.) Shortly thereafter, Banks filed a motion for a new trial on grounds that he received ineffective assistance of counsel, along with a complaint to the Attorney Registration and Disciplinary Commission ("ARDC") against his trial counsel. (Dkt. Nos. 19-1 at p. 89; 19-

2

14 at p. 2.) Banks's trial counsel testified at a hearing on this motion, and the court subsequently denied Banks's motion and found that his trial counsel was not ineffective. (Dkt. No. 19-1 at p. 399.)

On April 23, 2007, Banks was sentenced to consecutive terms of forty and twenty-five years on the attempted murder convictions, and a concurrent seven-year term on the unlawful use of a weapon conviction. (*Id.* at pp. 402, 407.) Banks directly appealed his conviction on May 1, 2007, and on May 11, 2007, counsel from the Office of the State Appellate Defender ("OSAD") was appointed to represent him. (*Id.* at pp. 10, 99.) On May 5, 2008, appellate counsel filed a motion with the Illinois Appellate Court requesting leave to withdraw from representing Banks pursuant *Anders v. California*, 386 U.S. 738 (1967). (Dkt. No. 19-3 at p. 1.) Counsel explained in her brief that she considered raising several issues on appeal, but concluded that none of the issues were of arguable merit. (*Id.* at p. 11.) The Illinois Appellate Court granted the OSAD's motion to withdraw and affirmed Banks's conviction on December 31, 2008. (Dkt. No. 19-1 at p. 308–10.) Banks then filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court on March 27, 2009. (Dkt. No. 19-4 at p. 1.) The Illinois Supreme Court denied Banks's PLA on May 28, 2009. (Dkt. No. 19-5 at p. 1.)

On December 8, 2009, Banks filed a *pro se* petition for postconviction relief. (Dkt. No. 19-6 at p. 28.) The trial court rejected his claims on March 8, 2010 as "frivolous and patently without merit." (*Id.* at p. 23.) He appealed that decision on March 29, 2010. (*Id.* at 38.) Counsel was appointed to represent Banks for this appeal on April 2, 2010. (*Id.* at p. 14.) Banks's post-conviction appellate counsel subsequently filed a brief arguing that Banks's trial counsel was ineffective for failing to subpoena his wireless telephone records, among other reasons. (Dkt. No. 19-8 at pp. 1, 6.) On January 31, 2012, the Illinois Appellate Court affirmed

the dismissal of Banks's petition. (Dkt. No. 19-14 at p. 1–2.) Banks then filed a PLA with the Illinois Supreme Court, arguing the appellate court erred in dismissing his ineffective assistance of counsel claim. (Dkt. No. 19-15 at pp. 1–15.) The Illinois Supreme Court denied his PLA on May 30, 2012. (Dkt. No. 19-6 at p. 1.)

Banks filed the present petition for a writ of habeas corpus on September 28, 2012. He alleges is trial counsel was ineffective for failing to:

> Ground One. Interview four people listed in the State's discovery who may have witnessed the shooting to see if they had any credible information;
>
> Ground Two. Fully investigate the case or interview any of the State's witnesses prior to trial, leaving him unable to impeach those witnesses;
>
> Ground Three. Subject the prosecution's case to meaningful adversarial testing by not fully cross-examining the State's witnesses;
>
> Ground Four. "Raise reasonable doubt due to insufficient evidence" because the physical evidence did not match the State's witnesses accounts of the shooting;
>
> Ground Five. Obtain a copy of the surveillance tape ("exculpatory evidence") from the Citgo gas station located near the scene of the shooting;
>
> Ground Six. Issue a subpoena for Banks's wireless phone records, which would have allowed his counsel to corroborate Banks's testimony at trial;
>
> Ground Seven. File a motion to suppress Cassandra Moore's identification of Banks after trial counsel was informed there was a "possible show-up while identifying the alleged car involved in the shooting;" and
>
> Ground Eight. Move for a directed finding at the close of the State's case in chief because such failure is evidence that "counsel went into trial without a

> strategy or adequate defense and only relied upon defendant's testimony, which is not enough to [overcome] the [S]tate's case."

He also alleges that his appellate counsel was ineffective:[1]

> Ground Nine. Because the representation was "poor" and he is unable to properly prepare any brief or do necessary research because due to lack of law library access (Dkt. No. 1 at p. 6); and
>
> Ground Nine. For failing "to raise any issues on appeal," and also for "filing an unwarranted *Anders* brief" because there were "numerous issues of merit that were clearly debatable." (Dkt. No. 1 at p. 8.)

## DISCUSSION

### I. Procedural Default

A federal district court may issue a writ of habeas corpus when a prisoner is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Before a federal court will consider his claims, a federal habeas petitioner must exhaust state remedies. *See* 28 U.S.C. § 2254(b)(1)(A). In order to exhaust state remedies, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). During this one complete round, a petitioner must present fully and fairly the federal law or constitutional protection violated and the operative facts underlying the violation, thus affording the state courts a "meaningful opportunity to pass upon the substance of the claim later presented in federal court." *Chambers v. McCaughtry*, 264 F.3d 732, 737–38 (7th Cir. 2001). A petitioner in Illinois completes one round

---

[1] Banks labels two claims "Ground Nine." The Court cites to the location of the claims in Banks's petition to distinguish them.

5

by presenting his claims on either direct appeal or post-conviction review at each stage of the appellate process, including to the Illinois Supreme Court. *O'Sullivan*, 526 U.S. at 847–48; *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999) (applying *O'Sullivan* rule to claims presented in petitions for state post-conviction relief).

Second, a petitioner must not have procedurally defaulted any of his claims. If a prisoner fails to present his claims in a petition for discretionary review to a state court of last resort, those claims are procedurally defaulted. *Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999). As part of this requirement, a petitioner must have fairly presented both the operative facts and legal principles that control each claim to the state judiciary. *See Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001); *Rittenhouse v. Battles*, 263 F.3d 689, 695 (7th Cir. 2001). A petitioner's failure to fairly present each habeas claim to the state's appellate and supreme court in a timely fashion leads to procedural default of the claim. *O'Sullivan*, 526 U.S. at 848. Under Illinois law, claims raised on direct appeal but not presented in a petition for leave to appeal to the Supreme Court are generally deemed waived. *Warren v. Campagna*, 1997 WL 471241, *1 (7th Cir. 1997).

A federal court may grant a petition for habeas relief on a defaulted claim only if the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Anderson v. Cowan*, 227 F.3d 893, 899–900 (7th Cir. 2000) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Cause is defined as "an objective factor, external to defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding." *McKee*, 598 F.3d at 382. Prejudice requires "an error which so infected the entire trial that the resulting conviction violates due process." *Id.* The fundamental miscarriage of

justice exception required a claim that the defendant be actually innocent of the crime for which he or she is imprisoned. *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).

Banks fairly presented his ineffective assistance claims to the Illinois appellate court on direct review by presenting an appeal listing specific acts of his trial counsel that allegedly constituted ineffective assistance. (*See* Dkt. No. 19-2 at pp. 2–5.) At issue, then, is whether Banks's PLA to the Illinois Supreme Court satisfies the fair presentment requirement. The State argues that Banks's PLA did not fairly present his ineffective assistance of counsel claim to the Illinois Supreme Court because he failed to cite specific acts of his trial counsel or any legal principles. (*See* Dkt. No. 18 at p. 16.) In his PLA, Banks does not specifically mention any particular acts that constituted ineffective assistance, unlike his highly specific direct appeal. (*See* Dkt. No. 19-2 at p. 2.) Nor does Banks cite any relevant federal or state cases regarding ineffective assistance of counsel. (*Id.* at p. 4.) Instead, he cites a lengthy transcript of his trial counsel's testimony from a post-trial hearing, asserting, "[i]t will show that counsel was in fact ineffective and violated the 6th and 14th Amendments to the U.S. Constitution." (*Id.*) He concludes his claim by stating, "appellant was in fact denied his constitutional rights to have a fair trial and the effectiveness of counsel." (*Id.* at 22.) Thus, all but one of Banks's claims are procedurally defaulted because he did not present the factual underpinnings through one complete round of state review. *See Pole v. Randolph*, 570 F.3d 922, 935 (7th Cir. 2009) ("[I]f a petitioner fails to assert in the state courts a particular factual basis for the claim of ineffective assistance, that particular factual basis may be considered defaulted.").

The only claim not defaulted because it was not subjected to a complete round of state court review is Banks's argument that his trial counsel was ineffective for failing to subpoena his cell phone records, which was argued in post-conviction proceedings to the trial court, the

7

appellate court, and to the Illinois Supreme Court in a PLA. (Dkt. Nos. 19-8 at pp. 52–54; 19-14 at pp. 6–8; 19-15 at pp. 11–15.) However, a federal court will not reach the merits of a habeas claim where: (1) the claim was presented to the state courts and their ruling against the petitioner rested on an adequate and independent state procedural ground; or (2) the claim was not presented to the state courts but it is clear that those courts would not hold the claim procedurally barred. *See Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). Thus, "[a] federal court entertaining a petition for a writ of habeas corpus will not review a question of federal law if it determines that the state decision rests on a state procedural ground that is independent of the federal question and adequate to support the judgment." *Page v. Frank*, 343 F.3d 901, 905 (7th Cir. 2003). A procedural default does not preclude a federal court from considering a habeas claim if the petitioner demonstrates either cause for the default and prejudice resulting from it or that a miscarriage of justice will result if the claim is not considered on the merits. *Id.* However, procedural default only precludes habeas review where the last state court rendering judgment on the claim 'clearly and expressly' stated that it rested its judgment on procedural default. *Harris v. Reed*, 489 U.S. 255, 262–63 (1989).

Here, the appellate court reviewing Banks's post-conviction petition expressly held that, under Illinois law, Banks waived this claim because he could have but did not argue it on direct appeal. (Dkt. No. 19-14 at pp. 7–8 (citing *People v. Harris*, 224 Ill. 2d 115, 124–25 (2007) and *People v. Scott*, 194 Ill. 2d 268, 274 (2000).) Instead, the appellate court found that Banks raised the issue in his motion for a new trial and therefore could have directly appealed it. (*Id.*) The Court therefore finds that this (and all) of Banks's claims are procedurally defaulted.

Because his claims are procedurally defaulted, for this Court to grant Banks's habeas petition, he must show "cause for the default and actual prejudice as a result of the alleged

violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Anderson*, 227 F.3d at 899–900. Banks argues that he has shown cause because his appellate counsel failed to raise any of the issues on direct appeal and instead filed an *Anders* brief. Ineffective assistance of counsel can sometimes be sufficient to show cause. *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986). However, Banks's argument does not explain why he failed to raise his claims in his PLA on direct review, before the appellate court and Illinois Supreme Court on post-conviction review, or on direct appeal for the phone records claim. Because Banks does not show cause, this Court will not review his procedurally defaulted claims.

Nor can Banks meet the fundamental miscarriage of justice exception. In order to meet this exception, Banks has the burden of demonstrating that he is actually innocent. *Buie v. McAdory*, 341 F.3d 632, 627 (7th Cir. 2003). To support a claim of actual innocence, Banks must come forward with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Banks must establish that "it was more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327. The new evidence that Banks presents is his wireless telephone records, the surveillance tape from a gas station near the crime scene, and testimony of two alibi witnesses.

This evidence does not meet the high burden to satisfy the "extremely rare" exception. The video camera at the gas station pointed towards the gas pumps and not the scene of the shooting, and could not have bolstered Banks's defense that he was elsewhere when the shooting occurred. Further, Banks's counsel testified that the police report in the case noted that the video did not show the scene of the shooting. Nor would his wireless phone records prove his

9

innocence because, as his counsel testified, they had little or no probative value of demonstrating where Banks actually was that night. Finally, Banks does not point to what, exactly, these alibi witnesses would have testified. The State's case consisted of testimony from several police officers and three eye witnesses to the shooting, two of whom positively identified Banks as the shooter. The mere presence of possible alibi witnesses cannot demonstrate that their testimony would prove Banks's innocence. Even if Banks's numerous ineffective assistance of counsel claims were not procedurally defaulted, they would nevertheless fail on the merits.

## II.      Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, Banks must establish that he was prejudiced as a result of his counsel's alleged deficiencies under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See McDowell v.. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007) (citing *Strickland*, 466 U.S. at 694). Under *Strickland*, the moving party must prove: (1) that his attorney's performance fell below an objective standard of reasonableness; and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McDowell*, 497 F.3d at 761. The burden of proof on a defendant asserting an ineffective assistance of counsel claim is a heavy one. *See Harris v. Reed*, 894 F.2d 871, 874 (7th Cir. 1990). "The benchmark for judging any claim to ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

If either the performance prong or the prejudice prong of the *Strickland* test is not met, there is no need to consider the other prong and the petition fails as a matter of law. *See Ebbole*

*v. United States*, 8 F.3d 530, 533 (7th Cir. 1993) ("A defendant's failure to satisfy either prong is fatal to his claim."); *United States v. Slaughter*, 900 F.2d 1119, 1124 (7th Cir. 1990). And "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

### A. Wireless Telephone Records

Banks alleges that his wireless telephone records would have showed that he could not have been with his co-defendant at the time of the shooting. However, his trial counsel explained that he did not subpoena the records because "the wireless phone records would not tell me where he was physically located because he could be anywhere making phone calls." (Dkt. No. 19-6 at p. 37.) Counsel considered the possibility of offering Banks's wireless telephone records, but decided that the evidence would not contribute to his defense, as the records had no probative value regarding his location the night of the shooting. Counsel's actions are presumed, under the circumstances, to be "sound trial strategy." *Strickland*, 466 U.S. at 689.

### B. Cross-Examination of State's Witnesses

Next, Banks alleges counsel was ineffective for failing to subject the State's case to meaningful adversarial testing by fully cross-examining the State's witnesses. On this claim, we consult the trial record. The State offered testimony from three witnesses: Charles Wilson, Patricia Jones, and Cassandra Moore. According to the State, Wilson and Jones were the intended targets of the shooting, and testified as eyewitnesses. Moore was also present with Jones on the night of the shooting, and provided an identification of Banks. Thus, the State's case rested heavily on the perceptions and identifications of Banks as one of the shooters on the night in question.

Banks's trial counsel conducted cross-examination of all three witnesses. For each witness, counsel asked leading questions meant to establish certain facts that would undermine each witness's testimony. On cross-examination of Wilson, counsel elicited that Wilson was a convicted felon, and called into question his competence on the night in question by establishing that he had consumed alcohol. Counsel also called into question Wilson's identification of Banks's weapon. On cross-examination of Jones, counsel established that Banks was not arguing with anyone at Hill's Lounge and did not appear to be angry, nor did he appear to be armed. Counsel further elicited from Jones that while the shooting was in progress, Wilson never mentioned Banks's name or nickname. On cross-examination of Moore, counsel attempted, albeit unsuccessfully, to attack Moore's identification of the victim, which was Moore's purpose as a witness. Banks's trial counsel appeared to grasp each witness's relevance to the State's theory of the case, and tailored his cross-examinations in an attempt to undermine their testimony on critical points. Banks's attorney "represented him with vigor and conducted a skillful cross-examination." *Harrington*, 131 S.Ct. at 791. Thus, Banks has not shown his trial counsel was ineffective due to inadequate cross-examination of the State's witnesses.

### C. Counsel's Investigation

Banks alleges that counsel failed to interview potential witnesses listed in the State's discovery. According to Banks, these witnesses could have provided exculpatory evidence that would have caused "the results of the verdict [to be] different." (Dkt. No. 1 at p. 5.) Counsel testified that although he was aware of these witnesses, he believed the police did not obtain any exculpatory evidence (or anything of evidentiary value at all) from these persons. Therefore, interviewing these persons would not have provided any benefit to Banks's defense.

12

Further, Banks does not identify who these potential witnesses are, or to what they would have testified. The mere fact that counsel did not call these witnesses does not render his assistance ineffective. *See United States v. Balzano*, 916 F.2d 1273, 1294 (7th Cir. 1990) ("[t]he Constitution does not oblige counsel to present each and every witness that is suggested to him."). Further, Banks cannot establish these witnesses would have aided his defense—they may very well have positively identified either Banks or his vehicle, thereby strengthening the State's case against him. Thus, Banks cannot show that the results of his trial would be different were these witnesses called. *See Harris v. Reed*, 894 F.3d 871, 879 (7th Cir. 1990) (holding counsel ineffective when he knew of, and failed to call, two specific witnesses who told police they saw a different suspect running from crime scene, thus leaving State's witness as the only account of the crime).

### D. Counsel's Alleged Failure to Interview State's Witnesses

Banks's next claim alleges that counsel was ineffective for failing to interview any of the state's witnesses in order to impeach them at trial. In order to prevail under *Strickland*, Banks must demonstrate that the outcome of the trial would have been different had counsel interviewed these witnesses, or else that he was prejudiced by his counsel's conduct. Banks provides no information regarding what these interviews would have allowed counsel to use on cross-examination. As described above, counsel still conducted meaningful cross-examination on the State's eyewitnesses and attacked their credibility and identifications. Because Banks does not show what these interviews would have revealed or that he was prejudiced because they were not conducted, this claim also fails under the *Strickland* test.

### E. Cassandra Moore's Identification of Banks

Banks next claims that counsel was ineffective for failing to file a motion to suppress Cassandra Moore's identification of him, after counsel was informed of a possible show-up while Moore identified the car involved in the shooting. Counsel testified that he chose not to file a motion to suppress because he believed Moore's in-court testimony would be admitted, as she could identify Banks based on photographs and recognized him from Hill's Lounge earlier in the evening. Not filing a motion to suppress identification can be a defensible strategic choice when a witness may still be able to identify a defendant at trial. Banks's trial counsel "could have logically concluded that it would be meaningless to keep out testimony . . . if the other evidence was admissible anyway, and so rather than fighting to keep the testimony out, he would discredit it with aggressive cross-examination." *Pittman v. Warden, Pontiac Correctional Center*, 960 F.2d 688, 691 (7th Cir. 1992). Indeed, Banks's trial counsel specifically attacked Moore's identification of Banks on cross-examination.

In any event, a successful motion likely would not have affected the trial's outcome. Charles Wilson would still have identified Banks as one of the shooters, and the remaining evidence would still have been sufficient to permit a jury to convict him. Therefore, Banks cannot show that this failure to file a motion to suppress constitutes ineffective assistance of counsel.

### F. Reasonable Doubt

Banks alleges that counsel was ineffective for failing to cast reasonable doubt on the State's case, in that the physical evidence did not match eyewitness accounts. Banks fails to elaborate on exactly what physical evidence did not match the State's witnesses' testimony. In the absence of any specific piece of evidence, Banks cannot show that his trial counsel did not

14

attempt to cast reasonable doubt on the State's case. As discussed above, counsel's cross-examinations were designed specifically to cast doubt on the competence of the State's witnesses and their ability to identify Banks. Under *Strickland*, this Court refrains from second-guessing what otherwise appears to be sound trial strategy.

### G. The Gas Station Surveillance Tape

Banks next alleges that trial counsel was ineffective for failing to subpoena a surveillance tape from the Citgo gas station. Banks alleges that this tape would have provided evidence that he did not commit the shooting. However, Banks's trial counsel did, in fact, attempt to secure surveillance footage from the night in question. Counsel testified in his hearing that he visited the Citgo station and spoke to a clerk; the clerk referred counsel to the station manager. Counsel contacted the manager in an attempt to view the surveillance footage. The manager informed counsel that the station's policy was to tape over the footage every seven to ten days, however, so the footage from the night in question no longer existed. Further, counsel testified that even if he could have obtained the surveillance footage, the video cameras at the station were aimed at the gas pumps, out of the line of sight from the crime scene. Although counsel conceded that Chicago police were able to obtain the tape, he testified that the police report showed that the police officer did not inventory a copy of the tape, and that the tape did not show the shooting as it happened. The State did not offer the surveillance tape as evidence at trial. Thus, counsel failing to obtain the tapes cannot be said to have prejudiced the defendant.

### H. Moving for Directed Finding

Banks argues that his trial counsel's failure to move for a directed finding of acquittal at the close of the State's case in chief constitutes ineffective assistance. On direct examination at his hearing, counsel testified that he did not move for an acquittal because he believed the

15

prosecution had proven their case. Banks does not provide any facts alleging why such a motion would have been granted. The State made a *prima facie* case for attempted murder in their case-in-chief. Two eyewitnesses identified Banks in court as the shooter, and the State offered testimony from several officers whose investigation of the crime scene matched the car in the shooting to Banks. Further, evidence showed that spent cartridges found at the scene of the shooting matched a handgun recovered from Banks's home.

The State presented sufficient evidence to sustain Banks's convictions. Had Banks's trial counsel moved for a directed finding of acquittal, the motion likely would have failed. Because the evidence against Banks was sufficient to sustain his conviction, he did not suffer prejudice from counsel's performance. *See United States v. Syverson*, 90 F.3d 227, 233 (7th Cir. 1996) ("Putting aside any question about whether [defendant's] trial counsel performed deficiently, we conclude that [defendant] did not suffer any prejudice from counsel's failure to move for an acquittal. Because the evidence against [defendant] was sufficient to warrant his conviction, no prejudice could arise from trial counsel's failure to challenge the sufficiency of that evidence through a motion for acquittal." (citing *United States v. Pedigo*, 12 F.3d 618, 623 (7th Cir. 1993)).

### I. Ineffective Assistance of Appellate Counsel

Banks's final claim is that by virtue of filing an *Anders* brief and withdrawing from representation, he received ineffective assistance by appellate counsel. The Sixth Amendment requires effective assistance by appellate counsel on direct review. *See Evitts v. Lucey*, 469 U.S. 387, 397 (1985). The two-pronged *Strickland* standard governs the inquiry of whether appellate counsel's assistance was effective. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Shaw v. Wilson*, 721 F.3d 908, 915 (7th Cir. 2013).

16

Appellate counsel is not required to raise every issue presented by the client. *Robbins*, 528 U.S. at 288. Further, if counsel determines that an appeal will be "wholly frivolous" and contains no colorable claims, counsel may follow procedures to withdraw from the representation. *Anders v. State of Cal.*, 386 U.S. 738, 744 (1967). First, counsel must conduct a conscientious examination of the case. *Id.* If counsel finds the case to be without merit, counsel may submit a brief to the court and request permission to withdraw, referring to "anything in the record that might arguably support the appeal." *Id.*

Banks's appointed counsel from OSAD followed the procedure outlined in *Anders*. After an investigation of the record, appellate counsel decided that an appeal would be without merit. Counsel then submitted a proper *Anders* brief to the state appellate court, including specific references to the record. Banks argues appellate counsel should be found ineffective because he did, in fact, raise nonfrivolous claims. However, just as in the trial setting, the Court does not engage in hindsight and second-guessing counsel's decisions. *See Valenzuela v. United States*, 261 F.3d 694, 698 (7th Cir. 2001) (in applying the *Strickland* test, the Court's examination of an ineffectiveness of counsel claim is "highly deferential" to counsel, presumes reasonable judgment, and declines to "second guess strategic choices" (citing *Strickland*, 466 U.S. at 689)); *see also Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000) ("[The Court] must resist a natural temptation to become a Monday morning quarterback."). No state court has found any of Banks's claims raised in his appeal to be meritorious. This Court, then, cannot say that counsel deviated from prevailing professional norms by filing the *Anders* brief and withdrawing from representation.

### III. Certificate of Appealability

Unless this Court issues a certificate of appealability, an appeal may not be taken to the United States Court of Appeals from this Court's judgment in a habeas proceeding. *See* 28 U.S.C. § 2253(c); *see also Bolton v. Akpore*, 730 F.3d 685, 697 (7th Cir. 2013). The decision of whether or not to grant a certificate of appealability is a screening device used to conserve judicial resources and prevent the Courts of Appeals from being overly burdened with unmeritorious habeas corpus petitions. *See Ouska v. Cahill-Masching*, 246 F.3d 1036, 1046 (7th Cir. 2001). Courts may only grant a certificate of appealability when the petitioner has presented "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Gonzalez v. Thaler*, —— U.S. ——, ——, 132 S.Ct. 641, 649 (2012). A substantial showing of the denial of a constitutional right requires the petitioner to show that reasonable jurists could find room to debate whether the petition should have been resolved in a different manner or that the issues presented are adequate to entitle the petitioner to proceed further with his claims. *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (*citing Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

Banks's claims are denied on procedural grounds. When a court dismisses a petition on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that reasonable jurists would find it debatable whether the district court was correct in its procedural ruling." *Slack,* 529 U.S. 485. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* at 484. Here, it is indisputable

that all of Banks's ineffective assistance of counsel claims are procedurally defaulted. Accordingly, Banks has failed to make a substantial showing of the denial of a constitutional right, and the Court denies him a certificate of appealability for the claims raised in his habeas petition. *See* 28 U.S.C. § 2253(c)(2); *see also Gonzalez*, 132 S.Ct. at 649.

## **CONCLUSION**

For the reasons stated herein, Banks's Petition for a Writ of Habeas Corpus is dismissed, and he is denied a Certificate of Appealability.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: December 30, 2013